CORNER *v.* KYLE.

---

PATENTS; INTERFERENCE.

Where, in an interference between a patentee and an applicant, the preliminary statement on behalf of the patentee was allowed to be made by his assignees because of his hostility towards them, and he refused to

testify in the case, and their only testimony was in explanation of their failure to procure substantial testimony, the necessary result was *held* to be that the date of the patentee's conception and disclosure and his reduction to practice could not be carried back further than the filing date of his application; and, as the junior party's actual reduction to practice antedated such filing date, he was awarded priority, even though he showed no sufficient cause for his delay in applying for a patent until after he had seen the patent issued to his rival.

No. 283.    Patent Appeals.    Submitted November 17, 1904.    Decided December 6, 1904.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. John G. Elliott* and *Mr. Francis A. Hopkins* for the appellant.

*Mr. H. A. Toulmin* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an interference case which comes to us by appeal from the Commissioner of Patents, and in which the invention involved consists in a new article in art glass and the process for making the same. The invention is stated in the five following counts, of which three have reference to the process of manufacture, and two to the manufactured article itself:

"1. The process of making art glass, which consists in coating a transparent base with an adhesive coating, then applying on the latter the raised lines of the design in plastic condition and allowing the same to harden, and then painting in the appropriate pigments between the lines of the design to secure the desired color effects.

"2. The process of making art glass, which consists in coating a transparent base with an adhesive coating, subjecting the

base and coating to artificial heat to harden and bake the latter, then applying on such coating the raised lines of the design in plastic condition, then hardening such lines and causing them to adhere to the coating by subjecting the whole again to an artificial heat, and then painting in the appropriate pigments between the lines of the design to secure the desired color effects.

"3. The process of making art glass, which consists in coating a transparent base with a transparent, colorless, adhesive coating, subjecting such base and coating to artificial heat to harden and bake the latter, then applying on such coating the raised lines of the design in plastic condition, then hardening such lines and causing them to adhere to the coating by subjecting the whole again to an artificial heat, then painting in the appropriate pigments between the lines of the design to secure the desired color effects, and finally coating the whole with a moisture-proof varnish.

"4. As a new article of manufacture, an art glass consisting of a transparent base, a transparent, colorless, adhesive coating superposed thereon, composition metal lines overlying and adhering to said coating and forming the outlines of the design, and suitable pigments disposed over the coating between the metal lines of the design.

"5. As a new article of manufacture, an art glass consisting of a glass base, a transparent, colorless, adhesive coating in the nature of a baking enamel superposed thereon, composition metal lines overlying and adhering to said coating and forming the outlines of the design, suitable pigments applied over the coating between the metal lines of the design, and a moisture-proof varnish covering the whole."

For this invention the appellant, George E. Corner, holds a patent, issued to him on March 25, 1902, upon an application filed on June 22, 1901. The appellee, Joseph D. Kyle, filed his application on May 29, 1902, after he became informed of the patent to Corner. The patent to Corner was assigned to Alexander Allardyce and the Consumer's Art Glass Company of Chicago; and in this interference, on account of the refusal

of Corner and his hostility to his assignees, Allardyce was permitted to make the preliminary statement in his place. In this preliminary statement Allardyce alleged conception of the invention by Corner in February of 1901; and its disclosure and reduction to practice by him in March of 1901, together with the manufacture and sale thereafter of large quantities of the article by the assignees of the patent. In the preliminary statement of Kyle it is alleged by him that he conceived, disclosed, and reduced to practice the invention of counts 1 and 4 of the issue about September 1, 1899; that he conceived and disclosed the invention of count 2 of the issue in August of 1900, and reduced it to practice about December 10 of 1900; and that he conceived and disclosed the invention of counts 3 and 5 of the issue in October of 1900, and reduced the same to practice about December 29, 1900.

In the course of the testimony it was shown that Corner was an employee, from the beginning of January, 1901, to the end of May, 1901, of the Kyle Art Glass Company of Springfield, Ohio, whereof Kyle was the general manager; and it was sought to be shown that Corner there learned the invention from Kyle. This would reduce the controversy, not to one of priority of invention, but to one of originality.

The Examiner of Interferences awarded judgment of priority of invention to Kyle. When the case came before the Board of Examiners-in-Chief on appeal one member of the board was absent and the other two were divided in opinion. One held that the decision of the Examiner of Interferences should be reversed *in toto* and judgment of priority rendered in favor of Corner; the other held that the decision of the Examiner in favor of Kyle as to counts 1, 2, and 3 should be affirmed, and as to counts 4 and 5 should be reversed. A rehearing seems to have been had at which all the members of the board were present. The two members who sat at the first hearing still adhered to their respective opinions. The remaining member was in favor of the affirmance of the decision of the Examiner and of awarding judgment of priority of invention to Kyle.

The result was the award of counts 1, 2, and 3 in favor of Kyle, and of counts 4 and 5 in favor of Corner.

The acting Commissioner, upon appeal, like the Examiner of Interferences, found all the issues in favor of Kyle. From his decision the present appeal in the name of Corner has been taken by his assignees.

There was no testimony taken in support of the statements of the Corner side of this case. It was the misfortune of Corner's assignees that they had incurred in some way the enmity of their assignor, and that he refused both to make a preliminary statement for them and to testify in the case, unless he was paid a sum of money deemed by them to be exorbitant. All the testimony that was taken on their behalf was simply in explanation of their failure to procure substantial testimony in support of their case. It was their misfortune, rather than their fault, that they were thus left without corroboration of their claim. The result, however, is that the date of the Corner conception and disclosure of the invention in issue and of its reduction to practice by him cannot be carried farther back than the filing date of the application on which his patent is based; namely, June 22, 1901.

We fully concur with the acting Commissioner of Patents, as well as with the Examiner of Interferences and a majority of the Board of Examiners-in-Chief, that there is ample testimony on behalf of Kyle to sustain the contention on his part that the invention in controversy was reduced to practice and used by him in his shops in Springfield, Ohio, in the year 1900, and especially in January of 1901; and that Corner, who was employed by him in those shops for a time, had ample opportunity to become acquainted there with the processes and the work of Kyle. While the case of Kyle is not wholly free from difficulty, and no sufficient cause seems to have been shown for his delay in application for a patent until after he had seen Corner's patent, yet, as he shows by entirely satisfactory testimony that he had reduced the invention to practice several months before Corner's application was made, we think that the Commissioner has properly held, as we here also hold, that he has suffi-

ciently borne the burden that was on him to overcome by testimony beyond reasonable doubt the effect of the Corner patent.

We think that in the acting Commissioner's opinion in the case the testimony has been fairly analyzed and considered, and the law properly applied. It is unnecessary to seek to add anything to that opinion.

We are of opinion that judgment of priority of invention was properly awarded to the appellee, Kyle; and the acting Commissioner's decision to that effect is therefore affirmed.

The clerk will certify this opinion and the proceedings in this court in the premises to the Commissioner of Patents according to law.                         *Affirmed.*